May it please the Court, My name is Jonathan Weissglass. I will be presenting today on behalf of the appellants. The central issue in this case is whether every state and locality can enact its own laws governing the employment of immigrants, thereby balkanizing our country's immigration laws and dramatically increasing the burden on employers. Arizona has attempted to enact its own scheme for sanctioning employers who hire unauthorized workers. It's a scheme that set odds with numerous choices that Congress made when it enacted IRCA's comprehensive system. And Arizona has attempted to mandate use of a federal program to verify work authorization over the Internet, even though Congress explicitly made this program voluntary. Arizona took this step out of frustration with Congress and the problem of illegal immigration. But if Arizona's act is not preempted, then every state and locality can enact its own variant based on Well, Congress has, it's a, you say it's a voluntary, it's free and voluntary for anybody to do this. So right now, should every employer in the country want to do it, they could do it. Are you talking about the whole act now? I'm responding particularly to the basic pilot mandate. E-verify. E-verify or basic pilot. Every employer in the country currently has the choice about whether or not to use the program. Congress said that every employer, quote, may elect whether to use it. But Arizona has taken away the option for employers in Arizona to elect. By saying they have to use it. Yeah. But Arizona has unique problems. The Federal Government has its own problems. So the Federal Government has set a standard at its level, and Arizona's decided that its problems as a state require a different resolution. What's the problem with that? Because Arizona doesn't have that power. Congress enacted this program and said that every employer has the choice about whether or not to use the program. Arizona does not have the power to remove that choice from employers. But you do agree that Arizona, under its police powers, has the right for the regulation of unauthorized aliens. That's Ticanus versus Bika. I mean, they have the right to do what they need to do with unauthorized aliens in their state. After IRCA was passed in 1986, the entire statutory scheme that was at issue in Ticanus has changed. Well, that's right. Are you arguing field preemption? No. We're not. We're not raising the issue of field preemption. But Ticanus we did raise it below. We didn't raise it here. The doctrines overlap a lot. But what we're saying about Ticanus is that post-IRCA, Congress said, we are going to implement Federal legislation to govern the area that, under Ticanus, the Supreme Court had said was left to the State police power to a large extent. But IRCA completely changes the game. There's an entirely new statute, and no longer does the States have the police power that they did at the time of Ticanus. Well, IRCA's not working. IRCA's not working. The I-9 path has been shown to be rife with fraud. The documents are fraudulent. It's evident that that's the situation. And so now Arizona wishes to have a better system, a more effective system, for its state. And I still don't see whether that's, how that can be a problem. Because it's Congress's decision about how to reform laws governing the employment of immigrants. Roberts. Where does it say that, that the States are prohibited from enforcing employer sanctions? There are two separate doctrines that govern this area, express preemption and conflict preemption. Right. With respect to express preemption, we've briefed this extensively, but I do want to make one point that goes to your question. There's a licensing exception on the express preemption provision. There is an exception in the express preemption provision. And that's what they're purporting to act on. Right. But that exception cannot swallow the rule. It's a very broad express preemption provision. And if it's not enforced broadly, then every State can enact its own mini-IRCA, saying what it thinks IRCA should be. Gee, that's a problem that Congress might want to address someday, then, if that's a problem for them. But Congress has addressed it, because in IRCA, Congress explicitly said it wanted uniformity. There cannot be uniformity if every State has its own scheme. Uniformity as to what? Uniformity as to the laws that will be enforced dealing with immigrant employment. The only way there can be uniformity is if the careful scheme that Congress set up, balancing a number of issues, burdens to employers and procedural due process, and making sure that lawful employees are not caught up in a COFDS scheme, the only way to balance that is to let the procedure that Congress set up in IRCA govern. And that goes through a Federal administrative law judge to make an initial determination about whether an employer has violated the law, and then up through the Federal courts of appeals. The saving clause cannot destroy that very careful scheme that Congress set up. But you agree that the Arizona scheme doesn't establish any different definition of what is illegal insofar as immigration is concerned? It does adopt the Federal definition, but the problem is it sets the real problem of a conflict with what the Federal finding is based on that definition. Let me give an example. Arizona relies on a response from the Federal government under this Section 1373 that's been discussed in the briefs. That's an inquiry to a Federal bureaucrat from a State or local government about citizenship or immigration status, not work status. But whatever comes back from that inquiry is simply a unilateral response based on these flawed databases that everyone admits have huge errors. Arizona then relies on that determination to decide whether an employer has employed an unauthorized alien. IRCA doesn't do that at all. IRCA relies on sworn testimony subject to cross-examination about whether someone has violated the Act. This sets up the possibility of huge inconsistencies. And another State may just decide we're not even going to give it to a State court judge. We'll send it to a binding arbitration based on a fax received from the Federal government. Well, then somebody will deal with that. Well, but this is going to open the door, because what's good for Arizona is good for every State. This case will set the law that will decide whether every State and locality can do this. But I also, in addition to express preemption, I want to turn to conflict preemption, because this is a separate and independent ground for finding preemption here. And the critical case here, the one case that that that that is not to show in conflict preemption that a that whatever action was taken by the State is is is in is cannot be compatible with what the what the Federal government wanted. And what the Federal government requires. And yet the Federal government says that this is a voluntary program that anybody can choose. Under under conflict preemption, we have to show it's an obstacle to Congress's purpose. That can be a difference in the law that presents an obstacle. Now, there are two issues here, the employer sanctions and the E-Verify mandate. Both of them present overwhelming obstacles. And in the employer sanctions area What's the obstacle with respect to E-Verify? With respect to E-Verify, the obstacle is that Congress wanted to let each employer make an independent choice based on its particular situation about whether to use it. Well, it had a pilot program, and it wanted to see how it was working. And now we have a State that thinks it's working pretty sufficiently for their purposes. And they they've decided to do it, to require it. If every State can do what Arizona did. You're saying that somehow this statute vested a right in employers to refuse E-Verify. That's what your argument has to be. Absolutely, Your Honor. That it Congress Congress said every employer may elect to use it. And if Arizona can make it mandatory, every State can make it mandatory. But you can't say that an employer who wishes not to do it because a State, if a State mandates it, doesn't have to do it or doesn't prohibit the States from mandating it. There's nothing like that. That's true, but that's why, with respect to E-Verify, we're not arguing express preemption. If that was the only thing that could take care of the problem, then there would be no doctrine of conflict preemption. But conflict preemption on E-Verify is very plain. It sets up an obstacle to Congress's attempt to pass a test, a pilot program, so that they could determine later on whether or not to make it mandatory. And that very debate is raging in Congress right now. There was a subcommittee hearing earlier this week about what to do with it. Why doesn't it further the pilot program by giving Congress more data as to how E-Verify would be working? It's not for Arizona to decide whether it can be a help to Congress. Geyer, the Supreme Court case of Geyer, says that Congress decides how to balance its goals. It's not the State's place to say, oh, we can give more help to Congress. Each employer has that choice. If the – if every employer who were subject to sanctions under this Act voluntarily decided to – that they would use this system, there would be no problem. I mean, that could happen under the Federal law. And that presumably will happen under the State law, that they will choose to, because the State law says they have to. Well, they won't choose it. They will be forced. Well, they will – yeah. But conceivably, the same thing as a practical matter could happen under the Federal law. So I guess we don't have here any employer who has said, I was forced to do this when I didn't want to. Well, no, we have the entire range of plaintiffs in this case, employer organizations. No, we don't have any. Yes, they're objecting to the requirement, but we don't have any specific instance where someone was forced to do this. Sure. We have declarations in the record. This is prior to the January 1st implementation date when we filed the case. We have declarations in the record say, I won't use E-Verify, but if the Act goes into effect, then I will have to. I do understand that. Right. We don't have anybody who actually has yet involuntarily done it. Oh, I think – I think there are plenty of people who have done it because it's now – the Act's in effect and they've complied with the Act. But I also want to address the employer sanctions conflicts. There are a huge number of them. The employer sanctions provision will allow conflicting decisions about who's authorized and who's not. It's going to destroy IRCA's procedural safeguards with an administrative law judge. Why is that? Why aren't there – isn't there a hearing required for the Arizona court here? Sure, there is, but – That a person can challenge the determination that he's unlawful? Sure. But there's no Federal administrative law judge and there's this reliance on the 1373 response. So if this piece of – Which creates a presumption. Which is the only thing under the statute that the Court can consider. But it does say presumption. The presumption has to do with challenging the authenticity. Presumably, if there's a presumption, it's rebuttable. It's a – it's a rebuttable presumption as to the authenticity of the document. But even if you take the State's reading and say that the rebuttable presumption somehow reads – Wouldn't we want to do that if there's a due process issue, to read it in the light most favorable to it being constitutional? Right. No, because there – only if it's susceptible to that reading, of course. And in this case, it would mean reading the word only completely out of the statute. The State's view doesn't harmonize, but reads out a part of the statute. But even if the State's right, even creating a system where this evidence is put into the record and then you're allowed to go behind it and present other evidence is completely different from IRCA. IRCA doesn't allow that. IRCA says put on your sworn testimony, allow cross-examination. This completely undermines it. It also increases the burdens on businesses who are going to be stuck having to deal with varying laws in different States, particularly for national businesses who are going to have to deal with Arizona and Hazleton and wherever else there's overlapping law. And it provides for the business death penalty with no counterbalancing anti-discrimination clause, where Congress very carefully balanced the penalties and the problems of discrimination. Well, but again, you're getting into something now that concerns me about your argument. There's nothing in here that I read in the legislative history at all that says Congress forbids the States from enacting this legislation. They have other clauses where they forbid the States from doing things, and they didn't put it in this one. In fact, I read through it. I don't even find anything in the legislative history that says that Congress even thought about this issue. What if a state made it mandatory? So it doesn't seem to me that if we're really talking about what Congress thought, one could easily say Congress thought this was a better system than it ought to be. The increase in discrimination, so be it. We're getting a benefit from what we're doing here. I mean, the bottom line is, is that looking at the legislation, I don't see where your argument goes. You're referring to the E-Verify issue. Well, again, Your Honor, as I said in response to Judge Walker, Congress didn't have to expressly say, States, you can't do that. That's express preemption. Well, I understand that. All Congress had to do was set forth what it wanted to do, which it said a half a dozen times. We're going to make this voluntary. The employer may elect it. And then, if a state- No, it didn't say anything about what the state ought to do. So what really we're looking at is here, what in the legislative history would give me the idea that a state doing this is something they did not want to happen? If they want, if I disagree with you, that they're taking over all of this area of legislation, this area of law, and I say that the states had it first, and they still have the opportunity to do it, then I have to look at the legislative history, because I can't find it in the law, to suggest that they didn't want this to happen. And then I have to look at the legislative history to suggest that, even though it may be more discriminatory than other things, that the benefit of the Act itself is not what we want, given the discrimination. I didn't find that in legislative history, either. That's because it's right there in the statute, where Congress said it's a voluntary program. Employers may elect to use it. Arizona cannot make mandatory what Congress said every employer may elect. I'd like to reserve the balance of my time. May it please the Court, I'm Mary O'Grady from the Arizona Attorney General's Office, representing the state defendants in this action, and this morning I speak on behalf of all the defendants in this proceeding, asking this Court to uphold the constitutionality of Arizona's law that is challenged here. The case, obviously, concerns the extent to which states can enact legislation that addresses the concern that employers hire people who are authorized to work within this country. De Canas v. Beeka is the Supreme Court case that addresses this issue, albeit it addressed it before IRCA, but made it clear that legislation in this area is within the mainstream of state police power. And although Congress has the authority to preempt state legislation in this area, there's no doubt about that, they haven't done so here. And I'd like to separately address the sanctions provision, which is ARS 23212, where we impose sanctions through licensing penalties against employers who knowingly or intentionally hire unauthorized aliens. And that's somewhat separate, different than the analysis of the E-Verify requirement. And I think it's somewhat easier because Congress actually addressed it specifically and said that in IRCA, that states can impose sanctions through licensing or similar laws. Arizona followed that model. And you're referring to the Savings Clause? The Savings Clause in 1324 AH2. And so I think that really answers the preemption question for the sanctions provision. Now, the argument that there first has to be a Federal enforcement action and before there can be a state enforcement action that plaintiffs make, again, is simply not what Congress said. It said it left room for states to make policy in this area as long as they confine it to licensing or similar laws. And that's what Arizona's done. So there is no preemption here. In terms of the E-Verify requirement, there again, Congress didn't address it. But all they said was that initially the Attorney General and then after Homeland Security was created, the Secretary of Homeland Security can't mandate this nationally. But that doesn't answer the question of state authority. You have to do, as you recognize, the conflict initial the conflict preemption analysis to see if there was an intent to oust state authority. And it's simply not there. There is no effort to preempt states. And is this enough? Well, isn't it really consistent? I guess what bothers me. Is it really consistent with the Federal law, which says it's voluntary for a state to say, yes, even though the Federal law says you don't have to use this, state says you must. And they're arguing that's inconsistent because we don't want to be mandated, we don't want to use this necessarily. Why isn't that inconsistent? I think you look at the conflict preemption test for when is there a conflict. Is there an actual conflict if we're complying with state law? Does that put them in violation of Federal law? The answer is no. So is this an obstacle preemption circumstance where, and for that you have to look at what's the goal of Congress. If Congress's goal is that this be voluntary and that we're not going to force anybody to do this. We don't want to force because it's untested and we just want to make this a voluntary so that it's the choice of the employer. Then why isn't it inconsistent with that goal for the state to say, yes, you have to use it? And I don't think Congress's goal here. Because they say that imposes a burden on employers that they didn't mean to impose in Congress. And I don't think the ultimate goal here of Congress was to establish a voluntary employee verification system. Why not? The goal is to establish an effective verification system because there were concerns that the I-9 system that had been placed, in place since IRCA was enacted, wasn't effective. They wanted to come up with something better. So they started with the three pilots. The pilot program saw that this e-verify, or formerly basic pilot, had some promise. And so they expanded it nationally so it could be available. So the goal here has always been to establish an effective verification program. And Arizona's law that requires it to be used helps further that goal. They want this program to be used. And often in the cases, they'll look at the Federal agency here. The Federal agency wants people to use this program. The evaluation suggests the more it's used, the more effective it can be. So, again, it's Arizona's requirement that it be used is absolutely consistent and supports the goal of helping develop an effective verification program. I know- When you say the Federal agency wants employers to use it, you base that on what? Well, for example, in the record we have in Exhibit 16 some fact sheets and announcements from the Secretary of Homeland Security in August of 87, where they said they are trying to, part of their efforts nationally are to expand and strengthen the use of e-verify. We submitted a supplemental authority, a presidential executive order from earlier this week, mandating the use of e-verify for government contractors. So, again, the story is expansion. We want this program to be used, and it really is the most effective program out there. And so Arizona's can look at this situation and say, we want to require this in our state. As an exercise of the police power that the United States- The costs of the e-verify versus the costs of doing the old system. To the employer. Your Honor, the record, the best evidence in the record there is the Westat study from September of 2007. This is a free Internet-based program, but they estimated, I think, about $100 in startup. Those are cited in the judge's ruling. Really minimal costs to the end. There's some variation depending on the size of the employer, but it's covered in the Westat study. Obviously, it would depend upon the size of the business. You know, to start up is one thing, and then to continually use it would be another. And it would matter as to the size of the business for that. Your Honor, yeah. And the Westat study takes a look at that. And that really was the basis of what we're finding standing in this case at all, the cost to participate. And e-verify, albeit that they are minimal, there are no threatened enforcement actions at this point against any of the plaintiffs in this proceeding. So the only standard- There's no real ability, as I recall it, to enforce the use of e-verify. There's no provision in the statute for that, in the Arizona statute. Your Honor, that's right. And they did make some amendments in terms of requiring it of contractors. But in the law that the Court was analyzing as it was enacted last year, there was no direct penalty for failing to use e-verify. So I suppose you could go into court and get an order directing someone to use it if they fail to do it, just as a law in the books, a civil order, and then they could be in contempt if they fail to do that. Perhaps, Your Honor. And I don't know who would do that, when I think in terms of, like, the Attorney General's authority, our authority is defined by statute, and the legislature certainly didn't give us the authority to bring such an action. So the idea is they wanted to require them to use e-verify. There's no – there was no penalty for failing to do so. But then there are the sanctions for knowingly or intentionally employing unauthorized aliens. One of the – I briefly addressed Guyer, which is really the plaintiff's main case on the conflict preemption issue. And there I think it's very different, because the Department of Transportation was before the court saying, you know, this tort liability for airbags would be a barrier to our goals of our system, the way it is structured. There's nothing like that in this case. All you have – all we have in the record is the federal government looking to expand and encourage the use of e-verify. Also there, the safety systems were developed by the private marketplace. And so requiring one particular safety system may, you know, thwart the innovations, which was one of the court's concerns there and one of the department's concerns, making sure that they were working with consumers. But here, there isn't private marketplace innovation. The only entity developing the employee verification system is the federal government. And we're simply requiring use of the system the federal government has developed, you know, for this particular purpose. That's all there is. That's it. That's it, Your Honor. We are using what the federal government has developed. And that, I think, relates to the uniformity issue here. And I think plaintiffs overstate the extent of this patchwork of laws, because the conduct in terms of employing unauthorized aliens is uniform nationwide. You can't do it. It's been against the law since 1986 to knowingly hire unauthorized aliens. The variation might be the sanctions, which Congress explicitly permitted through the Savings Clause in 1324 AH2. And the same is true with the E-Verify requirement. We're not out developing separate employee verification systems. We're just using and requiring that they use in Arizona the systems that the federal government has made available for this particular purpose. So for these reasons, we don't think this meets the standard for conflict preemption, express preemption, and Arizona's law is consistent with and supports the purposes of the federal government in this area, the federal laws in this area. And we ask this Court to affirm the trial court's decision. They also touched on the basis of this record. On the record here, we are dealing with a facial challenge. And that's a high burden for plaintiffs to establish. Under no circumstances can this law be constitutionally applied. And I think that really comes into play when you're looking at the due process, where we don't have any case before us, we don't have any evidence before this court that really is appropriately sorted out in a real case before the state courts. At this point, we have a record, we have a law where there's notice, there's all the protections of the rules of civil procedure, there's an opportunity for a hearing, and that should satisfy the facial challenge. Unless there are further questions, I thank you, Your Honor, and urge you to uphold the law. Thank you. I have four points in response. The first is with respect to Daconis. It's very important to take a look at what the Supreme Court said in the Hoffman Plastic case, which came after Daconis and after Urca, and specifically said that Urca made combating the employment of illegal aliens central to immigration law. That was not the case, central to Federal immigration law. That was not the case at the time of Daconis. So we're dealing with a completely new statutory scheme. My second point is about the employer sanctions provision. Everyone agrees, the district court, the plaintiffs, the defendants, that Arizona can make a determination about whether someone is authorized or not that can be contrary to the Federal determination and contrary to what other States would determine if they set up a similar system. So the same employee could be determined to be authorized in Arizona and unauthorized in New Mexico. That's not what Congress wanted when it set forth a uniform scheme, gave the initial determination about whether someone was authorized to a Federal administrative law judge. Sotomayor, I mean, that hasn't happened yet. It hasn't happened. It could potentially. That's your argument. That's right. And conflict preemption, if what's good for Arizona is decided here, the same rule has been applied in New Mexico and Nevada and everywhere else. There's one rule of conflict preemption. It's either going to allow this sort of thing or it's not. With respect to E-Verify, Guyer, which is the critical Supreme Court case here, makes clear that the Federal government decides how far it wants to extend a program. Nothing in Guyer, which dealt with airbags, said that the Federal government  And so in order to effectuate a specific policy, that's quite different from this case, whether the choice is yes or no on E-Verify, and the Federal government is not touting the virtues of the old system. Indeed, that's why E-Verify was enacted. So it's quite the policy considerations that were underlying Guyer are quite different from this case. Well, except that nothing in the scheme that was at issue in Guyer said that a State could not make airbags mandatory. There was nothing like that. It just what Guyer decided was that if a State could pose an obstacle to the Federal decision about how to phase it in. Which is developing innovation in that case. They wanted to develop innovation. There were competing systems and there was technology that could be developed that would improve the system. They didn't want to discourage that. That's not this case. It's actually very similar, because in this case, Congress said we want to test out this new thing over the Internet. Will it work? And they didn't say we're going to make every employer do that while we're in this test phase. How is that suppressing some other initiative that somebody might want to come up with? You know, it wasn't the situation. But that's not what Guyer turns on. Guyer turns on not having the States override the Federal determination about how to balance a goal. And there's one final point, if I may, Your Honor. If Arizona's act is not preempted, then every State is going to be doing this. The burden on employers is going to be immense. This Court has specifically found that Congress wanted to minimize the burdens on employers through IRCA. And if this is allowed, that will completely turn that determination on its head. We understand your position. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. We appreciate the arguments that were presented. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, Smith, Walker